# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORI FLOOK, | : | No. 4:15-CV-02069 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| THE TJX COMPANIES, INC, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### SEPTEMBER 15, 2017

Defendant The TJX Companies, Inc. (hereinafter "TJX") filed a motion for partial summary judgment[1] and a motion for summary judgment[2] on Count I of Plaintiff Dori Flook's complaint. For the reasons discussed below, both motions are granted.

## I. BACKGROUND

### A. The Injury[3]

Ms. Flook is a truck driver.[4] On February 21, 2014, while delivering a trailer full of goods to a distribution center in Pittston, Pennsylvania, she slipped

---

[1] ECF No. 25.

[2] ECF No. 27.

[3] The facts in this section are undisputed, and all inferences have been drawn in favor of Ms. Flook. *See* Standard of Review, *infra* § II.A.

[4] ECF No. 36, Ex. G at 41.

and fell on some snow and ice and injured herself.[5] That injury is the genesis of this lawsuit.

At the time of the accident, Ms. Flook was driving as an employee of 4M Express, a trucking company owned by her father-in-law.[6] The distribution center was operated by TJX.[7] On the day in question, Ms. Flook arrived at the distribution center around 9:50 am and checked in with an employee at the guard shack.[8] She was assigned a slot at the warehouse, where she was to park her trailer so that it could be unloaded.[9] It had recently snowed in Pittston, but "the road going into the place was clear" and she could see "piles of snow in different areas where it had [been] plowed."[10] She saw, however, that "they didn't plow under the trailers" parked in other warehouse slots; in fact, "[a]ll the trailers . . . had mounds of ice and snow under them . . . [i]ncluding the dock [she] was going into[, which] had a patch of ice, a hump."[11]

---

[5] *Id.* at 59, 76.

[6] *Id.* at 43.

[7] TJX owns and operates a host of retail stores including T.J. Maxx, Marshalls, and HomeGoods.

[8] ECF No. 36, Ex. G (Flook Dep. of September 28, 2016) at 61, 67.

[9] *Id.* at 64.

[10] *Id.* at 62.

[11] *Id.* at 63-64.

Ms. Flook noticed that snow and ice at her assigned slot "[w]hen [she] first drove up to it."[12] She had previously made deliveries to distribution centers with snow and ice on the ground, knew that such conditions were "not uncommon during the winter months," and knew that she should "take extra precautions" in such situations.[13] Although she realized that the snow and ice in her slot "could be slippery" and that she had to "be careful and exercise care," she didn't think it would "present a hazard or [be] dangerous to" her.[14]

After Ms. Flook backed the trailer up to the warehouse, she noticed that there was approximately 6 inches of snow and ice on the ground near her rear tires.[15] Walking "carefully across the mound of ice and through the snow," she unhooked the airlines connecting the trailer to her truck, chocked her tires, and rolled down the trailer's landing gear, without incident.[16] When she reached in to pull the pin on the truck's fifth wheel, however, she "got off balance[]" and "just slipped."[17] As she remembers the incident, her "feet went out from under [her] on

---

[12] *Id.* at 68.

[13] *Id.* at 92.

[14] *Id.* at 69, 94.

[15] *Id.* at 71, 73.

[16] *Id.* at 72, 74-75.

[17] *Id.* at 76.

the ice [and] went up in the air[,] and [she] landed flat on [her] back."[18] As a result, she suffered a broken tailbone and trauma to her back and head.[19]

### B. Procedural History

On September 18, 2015, Ms. Flook instituted the instant action in the Court of Common Pleas of Luzerne County. Her complaint alleged that her accident "was caused exclusively and solely by the negligence, carelessness, and/or recklessness" of TJX, and that TJX failed to, *inter alia*, eliminate or warn her of the "dangerous condition" – *i.e.*, the ice and snow – on its property.[20] On October 26, 2015, TJX removed the action to this Court on the basis of diversity jurisdiction.[21]

On December 20, 2016, TJX filed the instant motions. In its motion for partial summary judgment, TJX argues that there is insufficient evidence, as a matter of law, to support Ms. Flook's allegation that its actions were "reckless." In its motion for summary judgment, TJX argues that Ms. Flook's negligence claim must fail because it owed Ms. Flook no duty vis-à-vis the snow and ice on its property. Ms. Flook filed oppositions to these motions on February 17, 2017, and TJX replied to these oppositions on March 3, 2017. Attached to these filings were

---

[18] *Id.*

[19] *Id.* at 21.

[20] ECF No. 1, Ex. A ¶ 12.

[21] ECF No. 1 ¶ 5.

transcripts of the deposition testimony of Ms. Flook and several other individuals who worked at the distribution center.

C. **Snow and Ice Removal at the Distribution Center**

Several distribution center employees testified about the policies and procedures in place for dealing with snow and ice there, as well as the way those policies and procedures were put into practice.

In 2014, Kevin McDermott was the distribution center's maintenance manager.[22] In that position, his "primary duty" regarding snow and ice removal was "to policy,"[23] and to that end, he created a "Snow Removal Plan" to be followed by management and staff.[24] As part of its "Purpose," the plan indicated that it "will be used to ensure procedures are in place to keep parking areas for associate vehicles and trailers clear," and one of its "Objectives" was to take "all actions required to maintain proper control of trailers."[25] The plan outlines a list of "Responsibilities," broken down by employee position (*e.g.*, management, maintenance) and "phase" (*i.e.*, before a winter storm or after), that includes the responsibility to "[m]aintain a snow removal contract that provides the resources to

---

[22] ECF No. 36, Ex. F (McDermott Dep. of Nov. 11, 2016) at 9.
[23] *Id.* at 20.
[24] *Id.* at 47-48; Ex. I.
[25] ECF No. 36, Ex. I.

maintain the grounds clear of snow and ice buildup in a reasonable period of time."[26]

To effectuate this plan, the distribution center contracted with Snow Management, Inc. ("SMI").[27] As described by Mr. McDermott, SMI's "responsibility [was] to keep the parking lot clear of snow and ice, and to respond when we need them for dealing with snow and ice."[28] SMI would come automatically, without a call from anyone at the distribution center, when there was a snowfall or more than 2 or 3 inches.[29] And SMI would "continuously plow during the actual storms . . . just to keep up with keeping the lots clear for the trucks, because the trucks continue to operate during the storm."[30]

The distribution center did not leave all responsibility with SMI, however. As described by more than one employee at the distribution center, snow and ice removal was a "team effort."[31] The maintenance employees would assist in removal,[32] the managers and supervisors would monitor any ongoing situation and obtain any needed assistance,[33] and various materials – salt, ice choppers, and

---

[26] *Id.*

[27] ECF No. 36, Ex. F at 23.

[28] *Id.* at 22.

[29] *Id.* at 24-25.

[30] *Id.* at 25.

[31] ECF No. 36, Ex. D at 28, Ex. E at 34.

[32] ECF No. 36, Ex. E at 31-32, 46.

[33] ECF No. 36, Ex. F at 40, 49.

shovels – were located throughout the facility in case anyone, including drivers like Ms. Flook, needed them.[34]

Mr. McDermott admitted, however, that the distribution center did not have a "totally dry policy," and that the facility was "never going to be a hundred percent clear of snow or ice."[35] He agreed that there was an "issue with snow and ice accumulation underneath the trailers" and indicated that the company would pull the trailers away from the building in order to clear those areas completely only after a "heavy blizzard."[36] Although some of the deposed employees testified to seeing snow- and ice-related accidents at the distribution center,[37] others could not remember any such accidents,[38] and none of them could remember another driver slipping and falling on ice or snow there.[39]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[34] *Id.* at 34.

[35] *Id.* at 50-51.

[36] *Id.* at 48.

[37] ECF No. 36, Ex. D at 36, Ex. E at 38.

[38] ECF No. 36, Ex. A at 41-42, Ex. C at 20-21, Ex. F at 57.

[39] ECF No. 36, Ex. A at 41-42, Ex. B at 26-27, Ex. D at 37, Ex. E at 38, Ex. F at 57.

matter of law."[40] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[41] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow jury to rule in that party's favor.[42] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[43]

### B. Whether TJX Owed Ms. Flook a Duty of Care Regarding Snow and Ice On Its Property

When adjudicating a state law claim pursuant to its diversity jurisdiction, a federal court applies the substantive law of the forum state[44] – here, Pennsylvania. Under Pennsylvania law, a plaintiff alleging negligence must show (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) a causation connection between that breach and plaintiff's injury, and (4) damages.[45] The existence of a duty is generally a question of law for the court.[46]

---

[40] Federal Rule of Civil Procedure 56(a).

[41] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

[42] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[43] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[44] *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224 (3rd Cir. 1997); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[45] *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3rd Cir. 2005).

[46] *In re TMI*, 67 F.3d 1103, 1117 (3rd Cir. 1995).

When a plaintiff alleges that a defendant was negligent as a possessor of land – as is the case here – the defendant's duty depends on whether the plaintiff is considered a trespasser, licensee, or invitee.[47] If plaintiff was an invitee – which the parties agree was the case here – then the defendant is required to protect her from foreseeable harm.[48] The defendant, however, "is not liable to his invitees for physical harm caused to them by any activity or condition on the land *whose danger is known or obvious to them*, unless the possessor should anticipate the harm despite such knowledge or obviousness."[49] Whether a danger is "known or obvious" is usually a question of fact for the jury,[50] but it "may be decided by the court where reasonable minds could not differ as to the conclusion."[51] Courts interpreting Pennsylvania law have repeatedly held that the danger of snow and ice on the ground is "known or obvious" and that, therefore, possessors of land are not liable when invitees slip and fall on it.[52]

The danger from the snow and ice around Ms. Flook's vehicle was both "known" *and* "obvious." Ms. Flook repeatedly testified that she was aware of the

---

[47] *Carrender v. Fitterer*, 503 Pa. 178, 184 (1983).

[48] *Id.* at 185.

[49] *Id.* (emphasis added) (quoting Restatement (Second) of Torts § 343A).

[50] *See, e.g.*, *Devlin v. Home Depot U.S.A., Inc.*, 2013 WL 6835409 at *3-6 (M.D. Pa. 2013); *Wagner v. H.H. Knoebel Sons, Inc.*, 2016 WL 531694 at *2-4 (M.D. Pa. 2016).

[51] *Carrender*, 503 Pa. at 186.

[52] *See, e.g.*, *Id.* at 186-87; *Freudenvoll v. Stavros*, 49 Pa. D. & C.4th 328, 333-34 (Com. Pl. 2000); *King v. Rocktenn CP, LLC*, 643 Fed.Appx. 180, 183-84 (3rd Cir. 2016) (Jordan, J.).

conditions around her assigned slot. She spoke about the "patch of ice" there, which she noticed "[w]hen [she] first drove up to" the slot. She knew that these conditions were "not uncommon" and required her to "take extra precautions," "be careful[,] and exercise care." And although she testified that she personally didn't think this particular patch would "present a hazard or [be] dangerous," she nevertheless also admitted – perhaps contradictorily – that she realized it "could be slippery." Ms. Flook, then, almost certainly knew of the danger posed by the conditions around her vehicle, which was, in any event, obvious.

Ms. Flook argues that, even if the danger of the snow and ice was known or obvious, TJX should have anticipated the harm to her. To support this contention, she points to the fact that some of the employees at the distribution center remember seeing other snow- and ice-related accidents there. However, there is no evidence that any other drivers ever slipped and fell on snow or ice at the parking slots, and Ms. Flook admitted that these "not uncommon" conditions required some "precaution" and "care." In light of these facts, and in light of courts' repeated holdings that possessors of land are not liable for accidents on known and obvious snowy and icy conditions,[53] TJX should not have anticipated any harm to Ms. Flook.

---

[53] *See supra*, FN 52.

As a matter of law, then, TJX owed no duty to Ms. Flook regarding the snow and ice on its property.

### C. Whether TJX Owed a Duty of Care to Ms. Flook in Her Role as an Independent Contractor

In its motion for summary judgment, TJX argues that it owed no duty of care to Ms. Flook in her role as an independent contractor. To support this contention, TJX notes that, under Pennsylvania law, a possessor of land "who engages an independent contractor is not responsible for the acts or omissions of such independent contractors or his employees."[54]

This argument is misplaced, since that doctrine deals with situations where the *independent contractor* – not the possessor of land – acts negligently. Here, Ms. Flook has not alleged or produced evidence of negligence on the part of anyone but TJX. As she points out in her opposition to TJX's motion for summary judgment, this doctrine is "completely inapplicable to the matter at hand."[55] Therefore, this Court will not address it.

### D. Whether TJX Owed a Duty of Care to Ms. Flook Because It Undertook a Rendering of Services to Her

Ms. Flook argues that TJX owed her a duty because it undertook a rendering of services to her – *i.e.*, because it made an attempt to remove snow and ice from the distribution center. Under Pennsylvania law,

---

[54] ECF No. 27 ¶ 50 (citing *Beil v. Telesis Const., Inc.*, 608 Pa. 273, 289 (2011)).
[55] ECF No. 37 at 10.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.[56]

Ms. Flook, however, has not cited to any cases interpreting Pennsylvania law where this doctrine has created a duty in a situation involving snow and ice removal, nor has this Court found one.[57] In any event, Ms. Flook has pointed to no evidence showing that TJX's efforts to remove snow and ice "increase[d] the risk" of any remaining snow and ice, or showing that she relied on those efforts.

TJX's efforts at removing snow and ice from the distribution center, then, created no duty to Ms. Flook.

### E. Whether TJX's Behavior Could Be Considered "Reckless"

Under Pennsylvania law, "reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to other involved in it or with knowledge of facts which would disclose this danger to any reasonable

---

[56] *Feld v. Merriam*, 506 Pa. 383, 392-93 (1984) (citing Restatement (Second) of Torts § 323).

[57] *Cf. Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1089 (Pa. Super. Ct. 1997) (finding no duty); *Saris v. Charles*, 67 Pa. D. & C.4th 545, 553 (Com. Pl. 2004) (same). *But see Cater v. Starbucks Corp.*, 2010 WL 3169613 at *4 (E.D. Pa. 2010) (finding this issue a question for the jury where one party "regularly salt[ed] icy areas of the parking lot" and "inform[ed the other party] if the parking lot needed to be cleared of ice or snow").

man."[58]  Unlike negligence, which "consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions," recklessness "requires conscious action or inaction which creates a substantial risk of harm to others."[59]

Ms. Flook has failed to point to any evidence upon which a trier of fact could reasonably find that TJX's actions were reckless.  Mr. McDermott, the distribution center's maintenance manager at the time, testified extensively about the policies in place to deal with snow and ice at the distribution center, including the detailed and carefully-created Snow Removal Plan and the contract with SMI.  The other employees corroborated this testimony, and also indicated that keeping the area clear was a "team effort" involving everyone on site.  It is true that the distribution center did not have a "totally dry policy," that there was an "issue with snow and ice accumulation underneath the trailers," and that the company would pull all the trailers away from the building to clear those areas completely only after a "heavy blizzard."  But these facts, in light of the thoroughly-established and comprehensive procedures for snow and ice removal at the distribution center, cannot support a finding that TJX made a "conscious choice" to leave unsafe areas of snow and ice that created a "serious danger" or "substantial risk of harm," especially since none of the employees ever remembered a driver having an issue.

---

[58] *Tayar v. Camelback Ski Corp., Inc.*, 616 Pa. 385, 402 (2012) (citing Restatement (Second) of Torts § 500, cmt. g).

[59] *Id.* at 402.

There is insufficient evidence, then, for a trier of fact to find that TJX acted recklessly.

## III. CONCLUSION

As a matter of law, TJX owed no duty to Ms. Flook regarding the snow and ice on its property, and its efforts to deal with that snow and ice did not create such a duty. Additionally, as a matter of law, there is insufficient evidence for a trier of fact to find that TJX acted recklessly. TJX's motion for summary judgment and its motion for partial summary judgment, then, are granted.

Because Ms. Flook has failed to identify any other theory under which TJX could owe her a duty of care, she is – despite her injuries – unable to prevail on her claim of negligence and recover from TJX. Therefore, judgment is entered in favor of TJX on Count I of her complaint.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge